"'Burks, J.
It is familiar doctrine, that in partnerships each partner has the right to have the partnership effects applied to the discharge of all the partnership debts before any one of the partners, cr his personal representatives, or his individual creditors, can claim any right or title thereto. This right of appropriation is of such fixed character that it is usually denominated a lien, and sometimes a quasi lien, or something approaching to a lien. It is an 'equity between the partners, springing from the nature of the contract of partnership, which inures, however, and becomes available to the partnership creditors under certain circumstances, and especially on the dissolution of the partnership by the bankruptcy of the partners, or any of them. Story on Part. §§ 97, 360, 361; opinion of Allen, J.. in Morriss’ adm’r v. Morriss’ adm’r, 4 Gratt. 293, 320, et seq.
It is by virtue of this lien that priority of payment out of the social assets is accorded to the joint creditors in bankruptcy proceedings. It is not, to be sure, a specific lien, as a mortgage, deed of trust, pledge, or the like, but it is nevertheless a clear, distinct, well-defined equitable right, of the nature of a charge and having all the essential qualities of a lien quoad the administration of the social assets. It is neither lost nor destroyed nor impaired by the bankruptcy of the firm, or any of the partners, whether the adjudication be jointly as to all or severally as to each.
But when there has been an adjudication of bankruptcy under the bankrupt act of 3 867, the question arises, how and in what forum this lien is to be enforced? When the members of the firm are adjudged bankrupt in conformity to the provisions of the 36th section of the act, there would seem to be no doubt as to the remedy or the forum in which it is to be pursued. The assignee appointed under that section is invested *with the legal title to the joint estate of the partners, and also to the separate estate of each partner, and provision is made for proof of the debts against each estate, and the marshalling of the assets. There is but one representative of all the estates, one proceeding to administer them, and that proceeding in the bankruptcy court. Tuto that court, therefore, must the joint creditor go, prove his debt, and receive his dividends. He can assert his claim in no other forum.
But in the case under consideration, there has been no such proceeding as-is contemplated by the 36th section of the act. The proceeding of each partner was wholly voluntary, each several, separate and distinct from that of the other, neither having reference to the partnership, the partnership property, or partnership transactions. Each was commenced at a different time, in a different court, in a different state, and was separately conducted; in each the petitioning partner was individually adjudged bankrupt and an assignee of his estate appointed. In short, the proceedings in the two cases were substantially separate and distinct suits in different jurisdictions. I doubt very much whether there is any warrant in the bankrupt law for such proceedings; or, if they have any validity, I question more the jurisdiction of either of the bankruptcy courts to deal with the social effects and the rights of the social creditors. To give such jurisdiction, it would seem to be necessary that the proceedings should conform to the requirements of the 36th section of the act. We have no decision of the supreme court of the United States construing this section, - and the decisions of the district courts, besides being of no authority, serve but to confuse. See Bump on Bankruptcy, 10th ed., et seq.
In Amsimok v. Bean, 22 Wall. U. S. R. 395, the supreme court of the United States held that the assignee *of a partner individually adjudged bankrupt, could not recover the amount of a *564 claim which, when recovered, would belong to the firm, and that such recovery could only be had by the partnership, or “by an assignee duly appointed to administer the joint estate.
This decision would seem to imply, that to administer the joint estate of a bankrupt firm in bankruptcy-proceedings there must be an assignee of such estate, and I find no provision in the bankrupt law for the appointment of such assignee, except under the 36th section of the act. But if there can be under our bankrupt act a valid separate adjudication of bankruptcy of each member of a firm, and that adjudication draws into the bankruptcy court the administration of the social assets, such administration is only collateral and ancillary to the principal administration. It is not, under all circumstances, a necessity, and may be dispensed vnth at the option of the parties in interest. ’ As before stated, the partnership creditors, by virtue of the equity of the partners inter se, have a prior lien on the partnership property for the payment of their debts, and this priority is respected alike in bankruptcy as in courts of equity, and a like priority, upon the equitable principle of marshalling, is in bankruptcy accorded to the separate creditors in the administration of the bankrupt’s separate estate; the surplus, if any, of either fund after administration being carried to the account of the other. The most that the several assignees get, in the supposed case, under the assignments in bankruptcy, is the separate estate of the bankrupt and his individual interest in the partnership property, that interest being his distributive share in the surplus remaining after the payment of the partnership debts.
It is this estate and interest which each assignee has to administer, and it is the principal administration. The *joint estate need be administered by the assignees only when it is supposed there may be something left for division and distribution among the assignees after the joint debts are paid. If it is certain or probable that there will be no surplus, and the joint creditors waive all claim upon the separate estates in case of deficiency of the joint estate to pay the joint debts, the assignees and separate creditors may forego any administration of the joint estate in the bankruptcy court, and leave it to the joint creditors, to be administered elsewhere.
It appears by the record that the appellee, Corkery, was adjudged a bankrupt by the district court of the United States for the district of Louisiana, on the 1st day of June, 1868. This is admitted in the plea of the appellee, Spilman. His petition was doubtless filed on the 30th day of May, 1868, the day which the deed of assignment on its face relates. The deed bears date 16th day of June, 1868. The appellee, Mil-ward, (the other partner) was adjudged bankrupt on the 25th day of September, 1868, by the district court’ of the United States for the district of Virginia. The appellant’s bill was filed on the 27th day of June, 1872, and the decree appealed from pronounced on the 6th day of November, 1873.
The record contains a very meagre sketch of the proceedings in either of the bankruptcy suits. No copies of the bankrupts’ petitions, schedules or inventories are filed. The only part of the record furnished in Corkery’s case is a copy of the register’s deed of assignment to the assignee. In that deed no allusion is made to any interest he has as partner in the firm of Corkery & Milward. It appears, however, from the deed, that he was adjudged bankrupt individually and as a member of the firm of Hurd & Corkery. Although copies of the petition and schedules are not made a part of the record, looking to the deed and its recitals, it is fair to infer that no surrender *was made of his interest in the partnership effects of Corkery & Milward. In Milward’s case it is admitted by his assignee, in his answer to the appellant’s bill, that “said Milward, in making out his schedules in bankruptcy, did not include therein the debt due the complainant, nor the debt due to the said firm by Hill & Maddox, nor take any notice, in said schedules and in the proceedings in bankruptcy in his case of any of the transactions of said firm of Corkery & Milward.”
The only estate of Milward administered by his assignee, so far as the record discloses, is some “dioses in action of said bankrupt” sold by the assignee “at private sale” under the order of the register in bankruptcy. According to the certificate of the clerk of the district court, the only proof of debt filed in the case was that of Belcher & Ellis, of Philadelphia. Whether this was a partnership or individual debt, and what its amount, does not appear.
So that is would seem, that since the commencement of these bankruptcy proceedings, more than four years before the filing of the appellant’s bill in this cause, and five years before the date of the decree appealed from, no notice has been taken in either of the bankruptcy cases of the partnership effects of the bankrupts, and no proceeding had, or attempted, either by the bankrupts, the assignees, or the creditors, joint or separate, to have these effects administered in the bankruptcy court. Mil-ward received his discharge in December, 1868, and it is supposed that the proceedings in his case are at end, if such cases ever end, and the presumption would be that Corkery’s case, commenced several months before Milward’s had also terminated; but the appellee, Spilman, in his plea, avers “that proceedings are still pending and undetermined in said district court of the United States *for the district of Louisiana, upon the petition of said William E. Corkery.”
It is just such delays as this that drew from Mr. Justice Miller of the supreme court the following observations: “It is obviously *565 one of the purposes of the bankrupt law, that there should be a speedy disposition of the bankrupt’s assets. This is only second in importance to securing equality of distribution. The act is filled with provisions for quick and summary disposal of questions arising in the progress of the case, without regard to usual modes of trial attended by some necessary delay. Appeals in some instances must be taken within ten days, and provisions are made to facilitate sales of property, compromises of doubtful claims, and generally for the early discharge of the. bankrupt and the speedy settlement of his estate. It is a wise policy, and if those who administer the law could be induced to act upon its spirit, would do much to make the statute more acceptable than it is. But instead of this, the inferior courts are filled until suits by or against assignees, each of whom, as soon as appointed, retains an attorney, if property enough comes to his hands to pay one, and then instead of speedy sales, reasonable compromises, and efforts to adjust differences, the estate is wasted in profitless litigation and the fees of the officers who execute the law.” Bailey v. Glover, 31 Wall. U. S. R. 343, 346, 347.
It must be presumed after this great lapse of time, from the non-action of the parties and other circumstances in this case, that if it ever was the intention that the social assets of the bankrupts should be administered in the bankruptcy court, tl>"J intention has long since been abandonen, and the assets relinquished to the social creditors to be administered elsewhere. By this no injustice is done to any one. The creditors are certainly entitled to have such of the joint property as they can find ^applied to the payment of their debts. They have not submitted themselves to the jurisdiction of the Federal court by proving their debts in the bankruptcy proceedings, nor has the property been drawn to that jurisdiction. If it has been, the jurisdiction has not been exercised, and must be taken to have been waived or abandoned. A like presumption was acted upon by the court of appeals of Kentucky in a case not so strong as this, of contested jurisdiction under the bankrupt law. Bank of Louisville v. Bank of Newark, 14 American Law Reg. N. S. 281, S. C.; 10 Bush, 365. Moreover, the assignees have made no objection, if any they had or could successfully make, to the jurisdiction of the chancery court, but on the contrary they have severally submitted to the jurisdiction by filing answers to the appellant’s bill and praying decrees in their own behalf. This concludes the question of juridiction as to them. Doe v. Childress, 31 Wall. U. S. R. 643; Scott v. Kelly, 22 Wall. U. S. R. 57; Mays v. Fritton, 20 Wall. U. S. R. 414. The rule laid down by Waite, C. J., as to submitting to the jurisdiction of the bankruptcy court, applies, mutatis mutandis, to the state court. Wiswall & al. v. Campbell & al., 93 U. S. R. 3 Otto, 347, 351.
Tf the decree of the chancellor is affirmed by this court, the appellant and other joint creditors of the firm will be forced to prosecute their remedies in the bankruptcy court, whether in Virginia or in Louisiana it would be preplexing to determine, or else surrender their just claims. It is doubtful whether that court would or could now take jurisdiction. I think the chancery court of the city of Richmond has jurisdiction to give relief under the appellant’s bill, and erred in dismissing it.
In the view just taken, it becomes unnecessary in this case to determine whether the rule under the English bankrupt system, ably discussed and favorably considered * by Chancellor Kent in Murray v. Murray, 5 John. Ch. 60, of administering social assets under a separate commission of bankruptcy against one or more members of a firm, applies to proceedings under the bankrupt act of 1867. Certainly the rule is one of great convenience, and has much in it to commend it to favorable consideration. But if it is operative under our system, I do not perceive the necessity of the regulation prescribed by the 36th section of the act.
The reversal of the chancellor’s decree makes it necessary to consider what decree should be rendered in its stead. It results from the principles already declared and views expressed, that all the social creditors of Corkery & Milward have an equal right to participate in the administration and application of the social assets. By the bankruptcy of the several partners the social effects stand appropriated to all the social creditors alike. If the administration had taken place in the bankruptcy court, the distribution would have been pari passu. The like distribution must be made in the equity forum, where the prevailing rule is that equality is equity. It follows that the appellant could acquire no prior or superior lien, by attachment or otherwise. His bill, although not in form a general creditor’s bill, inures to the benefit of all the social creditors who may choose to come in under an order of account on the usual terms and exhibit and establish their respective claims. The attachment, therefore, should be abated. The abatement can do no harm, as the fund attached, which is the bone of contention, is already in the custody of the court, except such part as the appellee, Spilman, holds. He is amenable to the jurisdiction of the court, and if liable he can at any time be required to pay into court under its order.
The only effects mentioned in the appellant’s bill as partnership effects, and sought to be subjected as such, *consist of a judgment recovered in the names of Corkery & Milward against Hill, & Maddox in course of collection in the chancery suit of Corkery & Milward v. Hill, Maddox & others, a portion of which has already been collected and is in the hands of the appellee, Spilman. The whole amount of the judgment, including the portion collected and the portion uncollected, Spilman claims as belonging to him. In *566 his answer to the appellant’s bill, he asserts his title as follows:
“Further answering, this defendant says, that before the said William F. Corkery left here, in 1867, for New. Orleans, he sold, transferred and assigned to James Milward, Jr., his entire interest in the concern of Corkery & Milward, including the debt due them by the said T. Clay Maddox and Martha Hill in the bill mentioned; that the former assignee of said James Milward sold,- transferred and assigned the same to this defendant for valuable consideration, and the said district court of the United States for the eastern district of Virginia has approved, ratified and confirmed said sale and assignment, as will appear from a copy of the order of confirmation made by said court, filed herewith, and prayed to be taken as a part of- this answer. As to the said sum of $510, alleged to have been received by this defendant, it was received and appropriated in accordance with and in execution of said contract of sale and transfer, and this defendant denies the right of said complainant to recover it from him; and as to the remainder of said debt, which is yet uncollected, this defendant denies the right of said complainant to interfere with the collection of the same by him or the appropriation of the same by this defendant in any way he may see fit.”
An abstract of the judgment against Hill & Maddox is in the record. The judgment purports to have been recovered in the hustings court of the city of Richmond *on the 6th day of May, 1867, in the names of Corkery & Milward, as partners. The judgment, therefore, was, when recovered, a partnership debt. The answer admits that, and the respondent bases his claim upon the alleged fact, that before the bankruptcy of either partner Corkery had sold, transferred and assigned to Milward h'is (Corkery’s) entire interest in the concern of Corkery & Milward, including this judgment. No evidence whatsoever of such sale, assignment and transfer was furnished, nor was it proved that the judgment was ever actually sold by Davis, the former as-signee of Milward’s estate, under whom Spilman claims.
As has been seen, the subsequent assignee (Alderdice), in his answer to the appellant’s bill, in express terms admits that the judgment (described as a -“debt”) due by Hill &; Maddox, was not included in the schedules filed with Milward’s petition in bankruptcy. I presume he spoke from the. record. On the 4th day'of October, 1869, in the matter of Milward, bankrupt, H. G. Bond, register in bankruptcy, made an order by which, upon the application of Davis, the assignee, and upon the reading and considering the petition therein, as recited, it was “ordered that the assignee aforesaid be and hereby is directed to sell choses in action of said bankrupt by private sale.” No copy of the petition referred to' is in the record. The “choses in action” to be sold are not specifically enumerated, and it is supposed that the petition was equally as general, and contained no other description of the “choses in action” than that mentioned in the order, or at least that it did not go beyond the “choses in action” described in the schedule, and the judgment was not listed in the schedule as Alderdice states in his answer. Moreover, the order is in the most general terms, “to sell the choses in action of the bankrupt.” Under this order Spilman claims to have purchased, and *took an assignment from the assignee. The assignment, like the_ order, -is in general terms — “I hereby assign, sell and convey to Luther R. Spil-man all the debts and choses in action of James Milward, Jr., a bankrupt,” &c. It purports to be dated “16th day of June, A. D. 1869.” This date, I have no doubt, is a mistake, and is probably intended for the 16th day of October, instead of 16th day of June; for the revenue stamps attached to the assignment were cancelled by Mr. Spil-man’s name written and date added, “October 16th, 1869.” I have no doubt the date of Jhe cancellation is the true date of the assignment. The sale seems to have been confirmed by Judge Underwood on the 1st day of July, 1872, four days after the appellant filed his bill in this cause. The sale, I should think, needed some judicial sanction, at least after if not before it was made, for I do not know what warrant under the law the register had to order it.
From this evidence it does not appear that the judgment was ever actually sold by the assignee and purchased by Spilman. It was. the “choses in action of the bankrupt” only that were sold, and this judgment was not one of that description. Mr. Spilman may have believed that in buying the “choses in action of the bankrupt” he became entitled to this judgment, but he was mistaken, and the rule of caveat emptor applies to his case.
After the assignment of Milward’s choses in action to Spilman by the assignee, the bill in chancery was filed to enforce the judgment of Corkery & Milward against Hill & Maddox. It was agreed at the bar, that this bill was filed on the — day of December, 1869. The bill was filed by Spilman & Blackwell, as attorneys. It is filed in the names of “William F. Corkery and James H. Milward, date partners under the firm and style of Corkery & Milward,” and also in the name of J. J. *Wheat, who had a judgment against Hill & Maddox. No notice is taken in the bill, or anywhere in the record of the proceedings in that suit, so far as those proceedings are made to appear, of any title or claim of Mr. Spilman to this judgment, or any part of it. On the contrary, so far as the record discloses, it appears to be the suit of Corkery & Milward, late partners, with Mr. Spilman as their counsel, to enforce the collection of a partnership debt. By one decree it is ordered, “that L. R. Spilman have leave to check for twenty-five dollars, the amount of his fees for filing this bill, the writ and *567 the amount paid by him for advertising notice to creditors in the Richmond lin-quirer; that Corkery & Milward, or their counsel, L. R. Spilman, have leave to check for $165.06, the remainder of said fund.”
By another decree it is ordered that “the receiver pay over to Corkery & Milward, or to their counsel, R. R. Spilman, said sum of $137.50, in part satisfaction of their claim reported by Commissioner Hudnall, and that he continue to pay in like manner to said Corkery & Milward, or to their said counsel, the rents hereafter to be received from time to time as they shall come into his hands, until they are satisfied their said debt and interest in full.
After all this, I do not think that Mr. Spilman can complain, if he shall be held to account to the creditors of Corkery & Milward for the money received by him under these decrees.
His plea to the jurisdiction, if the alleged pendency of proceedings in Corkery’s bankruptcy case in Louisiana may be considered such a plea, is not well pleaded, and if it were, it has been sufficiently answered by what has already been said.
His plea of the act of limitations of two years under the bankrupt act, section 3, revised statute, section 5057, *has no application to a case like this. The limitation applies only to suits at law or in equity, by or against an assignee, or by or against any person claiming'an adverse interest touching the property and rights of property of the bankrupt transferable to or vested in such assignee. The controversy in this case is not a suit between him and the assignees, but a suit between him and the social creditors of the bankrupts; and, moreover, the circumstances of this case clothe him with a trust, against the enforcement of which in a court of equity he cannot be permitted to rely upon the statutory bar.
I think the- appellant has established the debt claimed in his bill, and he would now be entitled to a decree for the amount of it, if it had been duly ascertained that there were no other joint debts against the firm of Corkery & Milward outstanding and unpaid. Before any decree, however, should be made subjecting the social assets, there should be an inquiry and account ordered of the assets and of the debts chargeable thereon, including the amount collected by the appellee, Spilman, abating reasonable costs and charges for collection, and upon report made and approved, there should be a ratable distribution of the assets among such of the social creditors as under the order of account shall have exhibited and by proof established their respective demands.
Upon the whole matter, I am of opinion to reverse the decree of the chancellor, and remand the cause for further proceedings to be had therein in conformity to this opinion.
Christian and Anderson, J’s, concurred in the opinion of Burks, J.